# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9303 | **DATE** | 9/18/2003 |
| **CASE TITLE** | Emery vs. Northeast IL Regional Commuter Railroad Corporation d/b/a Metra/Metropolitan Rail, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing is set for 11/14/03 at 9:30AM.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION & ORDER. Defendants' motion to dismiss [4-1] is granted in part and denied in part. Counts I through VI, VIII, IX and XII, part of Count X, and Count VII as it relates to Metra are dismissed. Emery has twenty-one days from the date of this order (1) to file an amended complaint, if she is able to cure the defects addressed in the court's order; and (2) to file a more definite statement for Count VII. Defendants then have 30 days to file a responsive pleading.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | Document Number |
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | | date docketed | | 14 |
| ✓ | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| | | | U.S. DISTRICT COURT CLERK | date mailed notice | | |
| R?/ea | courtroom deputy's initials | | 03 SEP 18 PH 3:35 | | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | | |

ELLEN K. EMERY, )
)
Plaintiff, )
)
v. ) Case No. 02 C 9303
)
NORTHEAST ILLINOIS REGIONAL )
COMMUTER RAILROAD CORPORATION ) Judge Joan B. Gottschall
d/b/a METRA/METROPOLITAN RAIL, et al., )
)
Defendants. )

**DOCKETED**

**SEP 1 9 2003**

## MEMORANDUM OPINION & ORDER

In a twelve-count complaint raising various federal and state claims, plaintiff Ellen Emery

has sued her former employer, defendant Northeast Illinois Regional Commuter Railroad

Corporation d/b/a METRA/Metropolitan Rail ("Metra"), as well as Metra's executive director

Philip Pagano, general counsel Michael Noland, associate general counsel Theresa Barnett, and

senior attorneys Sue-Ann Rosen, Richard Capra, and Constance Valkan. The defendants have

moved to dismiss all counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. As

explained below, the defendants' motion is granted in part and denied in part.

## Background

Emery, an experienced trial attorney, was employed by Metra as in-house counsel from

June 23, 1997 until she was terminated on March 4, 2002. Her practice focused on cases

involving the Federal Employer Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, and she

evidently was quite successful in her profession; within six months of being hired, she was

14

promoted to Associate General Counsel–Litigation. In July 1999, Emery tripped over some raised electrical sockets at Metra's offices, resulting in a serious knee injury. Consequently, she had several surgeries and took a limited disability leave. Because her injury occurred at work, Emery filed a claim with Metra's Risk Management Department. Metra refused to pay the majority of her medical bills. After two years of attempting to resolve her claim with the Risk Management Department, Emery retained counsel to represent her in a FELA lawsuit against Metra.

Shortly after filing suit, Emery had her annual performance review with defendant Noland. Although she had always received annual performance bonuses in previous years, she did not receive a bonus, despite exemplary performance. Moreover, after she filed her FELA suit, she was told she could no longer represent Metra in FELA cases, was screened off all FELA cases, was denied access to all information concerning FELA cases, and was demoted to Senior Attorney. Metra also moved to disqualify Emery's counsel, Hoey, Farina & Downes (a firm which also represented many other plaintiffs in FELA actions against Metra), from all FELA cases involving Metra, accusing Emery of unethical behavior and disclosing attorney-client confidences, such as her knowledge of Metra's trial strategies, settlement practices and procedures, and case reserves. According to Emery, she never committed any such ethical violations.

Emery alleges that the defendants proceeded to defame her to various judges, attorneys, the John Marshall Law School ("JMLS"), its faculty, administration, graduates and students, and the National Association of Railroad Trial Lawyers ("NARTC"), beginning before her

2

termination on March 4, 2002, and continuing through the present. As a result, Emery commenced this lawsuit, alleging various counts involving constitutional deprivations of liberty and property interests in violation of 42 U.S.C. § 1983, conspiracy to violate her constitutional rights, retaliatory discharge and demotion, defamation, self-compelled defamation, tortious interference with contractual relations, tortious interference with prospective business advantage, civil conspiracy, and a violation of the Older Workers Benefit Protection Act, 29 U.S.C. 626(f). The defendants seek dismissal of all counts for failure to state a claim.

Emery concedes that no cause of action exists for retaliatory demotion or self-compelled defamation under Illinois law, so both Count I, to the extent it raises a retaliatory demotion claim, and Count VIII are dismissed without discussion. Likewise, Emery concedes that her claim in Count IV, for deprivation of her property interest in her job in violation of § 1983, cannot survive. The remaining counts are addressed below.

Analysis

I.    Federal Claims

A.    Retaliation under FELA (against Metra)

Emery's claim for retaliation under FELA against Metra, raised in Count III, is dismissed for failure to state a claim. As the Seventh Circuit has recognized, "neither [FELA] nor any other source of federal law creates a federal right against retaliatory discharge" for a plaintiff who is fired after filing a FELA claim. *Graf v. Elgin, Joliet & E. Ry.*, 790 F.2d 1341, 1344 (7th Cir. 1986); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 258 (2d Cir. 1995); *Mayon v. S. Pac. Transp. Co.*, 805 F.2d 1250, 1252-53 (5th Cir. 1986) (only remedy available for employee terminated for

filing FELA claim are the remedies under the Railway Labor Act, not FELA); *Landfried v. Terminal R.R. Assoc.*, 721 F.2d 254, 256 (8th Cir. 1983) ("Congress has not enacted a statute prohibiting an employer from discharging an employee in retaliation for filing a FELA action."); *see also Bielicke v. Terminal R.R. Assoc.*, 30 F.3d 877, 878 (7th Cir. 1994); *Shrader*, 70 F. 3d at 258.

## B.    Federal Common Law Retaliation (against Metra)

Emery also sues Metra, in Count II, for retaliation under federal common law. "There is no federal general common law." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Supreme Court "has recognized the need and authority [only] in some limited areas to formulate what has come to be known as 'federal common law.'" *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981). "These instances are 'few and restricted' and fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' and those in which Congress has given the courts the power to develop substantive law." *Id.* (internal citations omitted). Thus, "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Id.* at 641 (footnotes omitted).

Emery cites not a single case recognizing a federal common law claim for retaliatory discharge for an employee terminated for filing a FELA claim.[1] This court declines to be the

---

[1] Emery's reliance on *Smith v. Atlas Off-Shore Boat Services, Inc.*, 653 F.2d 1057 (5th Cir. 1981), in which the Fifth Circuit recognized a general *maritime* tort for retaliatory discharge, is unpersuasive. Admiralty law is one of the narrow areas that implicates uniquely federal interests.

4

first. There is no unique federal interest at issue, nor is there congressional authorization to create substantive law. Indeed, as discussed in the previous section, although Congress could have created a remedy under FELA for employees like Emery, it declined to do so. Count II is dismissed for failure to state a claim.

## C.     § 1983 Claim for Deprivation of Liberty Interest (against all defendants)

In Count V, Emery claims that she has a constitutionally protected liberty interest in her reputation and that the defendants, through defamatory statements they made about her, deprived her of this constitutional right without due process of law in violation of § 1983. Actually, reputation itself is *not* a liberty interest protected by the Fourteenth Amendment. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). Rather, to the extent there is a protected liberty interest at issue here, it is Emery's interest in pursuing the occupation of her choice. *See Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001). Defamation becomes actionable as a constitutional claim "when a state actor casts doubt on an individual's 'good name, reputation, honor or integrity' in such a manner that it becomes *'virtually impossible for the [individual] to find new employment in his chosen field . . . .'*" *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 617 (7th Cir. 2002) (quoting *Townsend*, 256 F.3d at 670) (emphasis added). "[S]erious impairment of one's future employment" is not even enough. *Id.* (citation and internal quotation marks omitted). Further, the plaintiff must show that stigmatizing[2] information about him was publicly

---

*Texas Indus., Inc.*, 451 U.S. at 641.

[2]Comments that are sufficiently stigmatizing to implicate the due process clause include charges of dishonesty, disloyalty and immorality. In contrast, charges of incompetence or neglect of duty do not. *Newton v. Chicago Sch. Reform Bd. of Trs.*, No. 96 C 7078, 1997 WL 603838, at *6 (N.D. Ill. Sept. 24, 1997) (citing *Hadley v. County of DuPage*, 715 F.2d 1238, 1245 (7th Cir. 1983)).

disclosed, and caused him to suffer "a tangible loss of other employment opportunities." *Townsend*, 256 F.3d at 669-70. Additionally, the stigmatizing information must have been disclosed incident to the discharge. *Siegert*, 500 U.S. at 234; *Newton v. Chicago Sch. Reform Bd. of Trs.*, No. 96 C 7078, 1997 WL 603838, at *6 (N.D. Ill. Sept. 24, 1997).

It is not evident from the complaint that any of the allegedly defamatory statements were made incident to Emery's discharge. Nowhere in Count V, or anywhere else in her complaint, does Emery allege that any defendant made a defamatory statement about her incident to her termination. Further, although Emery incorporates into Count V at least 21 purportedly defamatory statements that defendants made about her from January 15, 2002 through the present, it is unclear which, if any, of those statements were made incident to her termination on March 4, 2002. Emery argues that because her termination occurred within the "January 15, 2002 through the present" time frame in which the defamatory statements were made, "it is clear from the Complaint that the statements were made in relation to her discharge." (Pl.'s Opp. at 17.) The court disagrees. As argued by Emery, *all* of the allegedly defamatory statements made over a one-year period[3] were statements incident to her discharge. That argument ignores the law. To be actionable under § 1983, a defamatory statement must be published "in the context of termination," (*i.e.*, incident to termination). *McMath v. City of Gary, Ind.*, 976 F.2d 1026, 1032 (7th Cir. 1992). Neither defamatory statements made after the employee's termination nor defamatory statements made in an effort to cause an employee to quit are actionable under § 1983. *Siegert*, 500 U.S. at 234; *Newton*, 1997 WL 603838 at *7. This is not to suggest that the

---

[3]The one-year period counts only the time through the filing of the complaint.

publication and termination must occur simultaneously. But defamatory statements made weeks (let alone months) before or after termination are not statements made in the context of termination. *Morris v. Lindau*, 196 F.3d 102, 114 (2d Cir. 1999) (defamation must occur close in time to dismissal to succeed on § 1983 claim for deprivation of liberty interest); *see also Rodriguez de Quinonez v. Perez*, 596 F.2d 486, 490 n.3 (1st Cir. 1979) (questioning sufficiency of nexus between plaintiffs' termination and defamatory comments published a week earlier).

Emery may have a state law defamation claim for such statements, but not a § 1983 claim. She has not alleged that any defamatory statements were made in the context of her termination, nor would it be reasonable to make such an inference here. There is no way to ascertain from the complaint which, if any, of the multitude of purportedly defamatory statements were made in the context of her termination. Although notice pleading is sufficient, this claim, as pleaded, fails adequately to allege that any statements were made incident to Emery's discharge. Count V is therefore dismissed for failure to state a claim.

### D. § 1983 Conspiracy Claim (against all defendants)

Because Emery's underlying § 1983 claim fails to state a claim, Emery's claim in Count VI that the defendants conspired to violate her constitutional rights in violation of § 1983 must also be dismissed. *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) (no conspiracy claim absent actual denial of a civil right). Even if Emery's § 1983 claim had survived, however, her conspiracy claim would still be dismissed because the intracorporate conspiracy doctrine bars Emery's claim.

Under the intracorporate conspiracy doctrine, which originated in the context of antitrust

7

cases, "a conspiracy cannot exist solely between members of the same entity." *Payton v. Rush-Presbyterian–St. Luke's Medical Center*, 184 F.3d 623, 632 (7th Cir. 1999). The doctrine shields entities and their employees "from conspiracy liability for routine, collaborative business decisions" that are later alleged to be unconstitutional. *Newsome v. James*, No. 96 C 7680, 2000 WL 528475, at *15 (N.D. Ill. Apr. 26, 2000). Thus, "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Wright v. Ill. Dept. of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994) (citation and internal quotation marks).

The Seventh Circuit has ruled that the doctrine applies to all claims under 42 U.S.C. § 1985, and applies when the claim is against individual members of a single corporate or governmental entity. *Id.* The Seventh Circuit has not yet addressed whether the doctrine extends to § 1983 cases. Some courts have extended the doctrine to § 1983 cases involving employment claims and claims against school administrators. *See, e.g., Salto v. Mercado*, No. 96 C 7168, 1997 WL 222874, at * 1 (N.D. Ill. Apr. 24, 1997) (collecting cases). In contrast, courts facing § 1983 claims involving police misconduct have refused to apply the doctrine. *See, e.g., Moreno v. Town of Cicero*, No. 01 C 1726, 2002 WL 31017932, at *3 (N.D. Ill. Sept. 5, 2002); *Newsome*, 2000 WL 528475, at *15; *Salto*, 1997 WL 222874, at *1. Emery does not argue that the doctrine should not apply to any § 1983 claims, but rather only that it is inapplicable to her claim.

Whether the doctrine applies in a given § 1983 case, just as in a § 1985 case, depends on "whether the wrongful conduct was performed within the scope of the conspirators' official duties." *Doe v. Bd. of Educ. of Hononegah Cmty. High Sch. Dist. #207*, 833 F. Supp. 1366, 1382

(N.D. Ill. 1993) (barring both § 1985 and § 1983 claims against board of education). The

doctrine likely would not apply "where corporate [or government] employees are shown to have

been motivated *solely* by personal bias. In that case, the interests of the corporation [or

government entity] would have played no part in the employees' collective action, so the action

could not have been taken within the scope of employment." *Hartman v. Bd. of Trs. of Cmty.

Coll. Dist. No. 508*, 4 F.3d 465, 470 (7th Cir. 1993) (emphasis added). Further, although the

doctrine can apply whether single or multiple unconstitutional acts are involved, in "egregious

circumstances" intra-entity collaborative decisions that result in unconstitutional actions fall

outside the scope of the doctrine. *Wright*, 40 F.3d at 1508-09 (§ 1985 case). Considering those

factors, it makes sense that the doctrine will rarely, if ever, apply in police misconduct cases. A

claim that several police officers conspired to frame a person for murder, *see Newsome*, 2000

WL 528475, at *15, would not be barred by the intracorporate conspiracy doctrine, the rationale

being that the officers were neither acting in the interests of the police department, nor in the

scope of their official duties.

In contrast, this claim relates to an allegedly collaborative decision at Metra regarding

what statements to make about Emery's termination. Such a collaborative decision falls directly

within the type of routine, collaborative business decisions shielded by the intracorporate

conspiracy doctrine. Emery, however, argues that her claim is not barred by the intracorporate

conspiracy doctrine because the complaint alleges that the individual defendants were acting in

their own self-interest. Where personal bias is the *sole* motivation, the doctrine does not apply.

*Hartman*, 4 F.3d at 470 (but plaintiff cannot avoid the intracorporate conspiracy doctrine "by

showing that [government] employees were motivated in part by personal bias"). Although

9

Emery alleges that the individual defendants acted against Metra's interests and solely in their own self-interest, that allegation is inconsistent with her claim that the individual defendants conspired *with Metra*. Her conspiracy claim is thus logically inconsistent. If, as Emery alleges, Metra and the individual defendants *shared the same conspiratorial goal* of depriving her of her interest in pursuing the occupation of her choice, then the individual defendants necessarily must have been acting in Metra's expressed interests (even if they were also motivated by their personal biases against Emery). Under no set of facts could a jury conclude that the individual defendants, acting entirely *independent of* Metra's interests, conspired *with* Metra toward a common goal. Emery's claim that the defendants, including Metra, conspired together is barred by the intracorporate conspiracy doctrine. Count VI is therefore dismissed.

### E.    Older Worker Benefit Protection Act (against Metra)

In Count XII, Emery claims that Metra violated the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f) by offering to allow her to resign as Associate General Counsel if she agreed to waive all of her rights and claims, but failing to give her 21 days to consider the offer. Emery clearly misses the point of the OWBPA. The OWBPA, an amendment to the Age Discrimination in Employment Act ("ADEA"), "'governs the *effect* under federal law of waivers or releases *on ADEA claims . . . .'" *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1191 (10th Cir. 1999) (quoting *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998)). Under § 626(f), a waiver of an ADEA claim is valid only if it is made knowingly and voluntarily. 42 U.S.C. § 626(f)(1). Section 626(f) sets forth the minimum requirements for a waiver to be deemed knowing and voluntary, which includes a requirement that the employer give the employee at least 21 days to consider the agreement. *Id.* at § 626(f)(1)(F)(i). The OWBPA

10

therefore simply governs whether, as a matter of law, an employee has waived her right to bring an ADEA claim. *Whitehead*, 187 F.3d at 1192. An OWBPA violation might be relevant if Emery had signed a waiver of her ADEA claims, then sought to raise them on the ground that the waiver was invalid. *See Williams v. Gen. Motors Corp.*, 901 F. Supp. 252, 255 (E.D. Mich. 1995) ("only conclusion that necessarily follows [from OWBPA violation] is that an employee who has suffered such a violation has not lost the right to press claims of age discrimination under ADEA"). But that is not the case here. Emery does not allege that she signed such a waiver. More significantly, Emery makes no claim that Metra discriminated against her based on her age. A violation of the OWBPA, by itself, is not grounds for an age discrimination claim. *Whitehead*, 187 F.3d at 1192. Count XII is therefore dismissed for failure to state a claim.

## II.     State Law Claims

### A.     Retaliatory Discharge (against Metra)

Emery also brings a state law claim for retaliatory discharge against Metra (Count I), but this claim must be dismissed. Although Illinois law recognizes tort claims for retaliatory discharge, it does so on a narrow basis. The general rule is that "an employer may fire an employee-at-will for any reason or no reason at all." *Jacobson v. Knepper & Moga, P.C.*, 706 N.E.2d 491, 492 (Ill. 1998). The retaliatory discharge tort is a very limited exception to that general rule. *Id.* To establish such a claim, a plaintiff must allege that "(1) he was discharged in retaliation for his activities; and (2) the discharge is in contravention of a clearly mandated public policy." *Id.* at 493. According to the Illinois Supreme Court, retaliatory discharge claims have been allowed in only two situations: "when an employee is fired for filing, or in anticipation of the filing of, a claim under the Workers' Compensation Act" and "when an employee is

discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistle blowing.'" *Id.*; *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936, 940 (7th Cir. 2002).

As a railroad employee, Emery has no right to file a claim under the Workers' Compensation Act, 820 ILCS 305/1, *et seq. Starks v. N.E. Ill. Reg'l Commuter R.R. Corp.*, 245 F. Supp. 2d 896, 898 (N.D. Ill. 2003) (FELA offers exclusive remedy for railroad employees seeking to recover for personal injury incurred in course of employment). Emery, however, argues that her FELA lawsuit is analogous to a claim under the Workers' Compensation Act, and her retaliatory discharge claim, by analogy, is actionable. The court grants that the causes of action are in some respects analogous, and it is possible that an Illinois court, faced with a claim that an individual was fired for asserting rights to compensation for FELA injuries, might well find that a sufficient public policy interest was implicated.[4] But the inquiry in the Illinois courts as to whether a claim of retaliatory discharge lies is not limited to a determination of whether there are important public policy interests at stake when a worker brings an action to recover for work-related injuries. "[O]ne of the factors that a court considers in deciding whether to allow a retaliatory discharge claim is the existence of an alternative remedy. The tort . . . was not intended to serve as a substitute means for enforcement of particular laws." *Stebbings v. Univ. of Chicago*, 726 N.E.2d 1136, 1141 (Ill. App. Ct. 2000) (internal citations omitted). Indeed, the

---

[4]Although no Illinois courts have addressed whether filing a FELA claim implicates clearly mandated public policy interests, in *Sabich v. National Railroad Passenger Corp.*, No. 90 C 3344, 1991 WL 256651, at *1 (N.D. Ill. Nov. 20, 1991), the only case cited by the parties that is directly on point, the court rejected the argument that filing a FELA claim implicates a clearly mandated Illinois policy and concluded that the Illinois Supreme Court would not recognize such a claim. *Id.*

Illinois Supreme Court allows retaliatory discharge claims for employees allegedly discharged after filing Workman's Compensation claims "precisely because there [is] no other remedy available to vindicate the public policy involved." *Brudnicki v. Gen. Elec. Co.*, 535 F. Supp. 84, 89 (N.D. Ill. 1982) (citing *Kelsey v. Motorola, Inc.*, 384 N.E.2d 353 (1978)).

Here, Emery has a remedy under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq. Shrader*, 70 F.3d at 258. Under the RLA, she can file a grievance. Both reinstatement and back pay are available remedies, although punitive damages are not. *Hysten v. Burlington N. Sante Fe Ry. Co.*, 196 F. Supp. 2d 1162, 1168-69 (D. Kan. 2002). In contrast, under Illinois law, punitive damages usually are available in retaliatory discharge cases, if warranted. *Midgett v. Sackett-Chicago, Inc.*, 473 N.E.2d 1280, 1283 (Ill. 1985). Had Emery been discharged by a different employer, that fact would likely save her claim: Illinois courts have allowed retaliatory discharge claims in cases where the available alternative remedy did not allow punitive damages, reasoning that the deterrent effect of punitive damages is key to dissuading employers from retaliating against employees. *Id.* But the fact that Emery cannot recover punitive damages under the RLA makes no difference here, because Emery cannot recover punitive damages from Metra under Illinois law, either. Under 745 ILCS § 10/2-102, local public entities, like Metra, are not liable to pay punitive damages in any action. *Williams v. Northeast Ill. Reg'l Commuter R.R. Corp.*, No. 97 C 6606, 1998 WL 901695, at *9-10 (N.D. Ill. Dec. 17, 1998) (citing statute and *Smith v. Northeast Ill. Reg'l Commuter R.R. Corp.*, 569 N.E.2d 41 (Ill. App. Ct. 1991)). This court finds it unlikely that Illinois courts would extend the narrow tort of retaliatory discharge to encompass a claim like Emery's where she has an adequate alternative remedy.

Emery also argues that employees, like her, who report violations of the Occupational

Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 651, have actionable retaliatory discharge claims under Illinois law. Without saying so explicitly, Emery essentially argues that she qualifies as a whistle-blower. The case on which she relies, *Sherman v. Kraft General Foods, Inc.*, 651 N.E.2d 708, 712 (Ill. App. Ct. 1995), was a case in which the plaintiff reported OSHA violations. Illinois courts have recognized retaliatory discharge claims brought by employees allegedly discharged after reporting violations of various federal laws.[5] *Brandon*, 277 F.3d at 942 (collecting cases). Those cases involved violations of nuclear regulations, radioactive materials regulations, federal record keeping regulations, federal securities laws, and OSHA. *Id.* The impact of reporting such violations in those cases clearly extended beyond protecting an individual's rights and interests, and implicated the general welfare of others. The court is not persuaded that Emery's claim similarly implicates the general public welfare. She filed her FELA claim based on personal, physical injuries she incurred when she tripped over some raised electrical sockets at work. Complaining of a trip-and-fall is categorically different from reporting asbestos-related occupational hazards. *See Sherman*, 651 N.E.2d at 712. Moreover, even if such a claim could be characterized as whistle-blowing, the reporting of a federal violation is not the issue here. Emery does not allege she was discharged for filing a FELA claim or complaint, but that she was discharged for filing her FELA lawsuit, which occurred two-and-a-half years *after*

_____

[5]Illinois allows retaliatory discharge claims in such situations because Illinois recognizes that public policy interests are found in both federal law as well as state law. *Johnson v. World Color Press, Inc.*, 498 N.E.2d 575, 576 (Ill. 1986). Illinois thus allows retaliatory discharge claims where Congress has declared a clearly mandated public policy that is national in scope. *Id.*

she initially blew the whistle.[6]

The defendants raise the additional argument that, as an attorney, Emery cannot bring a retaliatory discharge claim. The general rule is that attorneys cannot bring claims for retaliatory discharge under Illinois law against their employer/client because in most circumstances, "a client may discharge his attorney at any time, with or without cause." *Balla v. Gambro, Inc.*, 584 N.E.2d 104, 108-109 (Ill. 1991). As explained above, Emery fails to state a claim for retaliatory discharge regardless of her status as attorney. The court therefore need not address whether Emery's case presents a basis for departure from this general rule. Count I is dismissed.

**B.      Defamation (against Metra, Noland, Barnett, Rosen, Capra & Valkan)**

In Count VII, Emery brings a defamation claim against Metra, Noland, Barnett, Capra and Valkan. For defamation claims, federal courts require a plaintiff to plead defamation "with some specificity." *Betten v. Citibank F.S.B.*, No. 94 C 5460, 1995 WL 387802, at *3 (N.D. Ill. June 28, 1995). A plaintiff bringing a defamation claim is required to plead "the alleged defamatory words published or spoken by the defendant." *Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1284 (N.D. Ill. 1996). The reason for this rule is that "general knowledge of the exact language used is necessary [for defendants] to form a responsive pleading." *Id.* (citation and internal quotation marks omitted). Nevertheless, while courts give lip service to an *in haec verba* pleading requirement, at least in this district, a plaintiff need not allege the defamatory language verbatim. *See id.*

---

[6]Despite Emery's suggestion to the contrary, in *Arres v. IMI Cornelius Remcor, Inc.*, 333 F.3d 812, 814 (7th Cir. 2003), an opinion recently issued by the Seventh Circuit, the court did not hold that every report of a violation of federal law implicates Illinois' public policy. Rather, it stated that "the state's public policy encourages employees to report suspected violations of federal law if that law advances the general welfare of Illinois citizens." *Id.*

Emery adequately satisfies the pleading requirements here. Indeed, more than twenty of the alleged defamatory statements at issue are pled as direct quotes. The problem defendants have with the complaint is that Emery neither specifies which defendant made which statement nor offers any context for the statements. Relying on cases from other circuits, defendants claim that Emery's defamation claim should be dismissed for failure to plead "the time, place, content, speaker, and listener of the alleged defamatory matter." *Caudle v. Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1996). The court disagrees. No court in this district has ever required that degree of specificity for a defamation claim. *See, e.g., Woodard v. Am. Family Mut. Ins. Co.*, 950 F. Supp. 1382, 1388 (N.D. Ill. 1997) (requiring only content, not date, of libelous publication). Indeed, courts recognize that plaintiffs may not be able to state precisely which defendant made which statement, or to whom, without the benefit of discovery. *Wynne v. Stevenson*, No. 02 C 5263, 2002 WL 31804497, at *2 (N.D. Ill. Dec. 13. 2002); *Cozzi v. Pepsi-Cola Gen. Bottlers, Inc.*, No. 95 C 3648, 1997 WL 308841, at *6 (N.D. Ill. June 2, 1997). Emery's defamation claim against the individual defendants is sufficient.

As for the defamation claim against Metra, "a corporation is jointly and severally liable for [defamatory] statements actionable against its employee when the employee is acting within the scope of his employment." *Reed v. Northwestern Publ'g Co.*, 530 N.E.2d 474, 484 (Ill. 1988). But Emery specifically alleges that the defamatory statements made by Noland, Barnett, Rosen, Capra and Valkan "were not made within the scope of their official duties, but for personal motives." (Compl. ¶ 39.) In so alleging, Emery has effectively pled herself out of court with respect to her claim against Metra. The defamation count, as it relates to Metra, is therefore dismissed. Emery may of course amend if she is can cure this defect; any amendment must be

filed within twenty-one days.

Additionally, the court recognizes that the defamation claim, as it stands, makes it difficult for the defendants to answer or assert affirmative defenses.[7] The court therefore grants the defendants' request for a more definite statement. Emery is directed to supplement her defamation allegations within twenty-one days to include facts regarding the speaker, listener, timing and context of each alleged defamatory statement, to the extent she has such knowledge. *Cozzi*, 1997 WL 308841, at *6.

### C. Tortious Interference with Contract (against Noland, Barnett, Rosen, Capra & Valkan)

Emery's claim for tortious interference with contract, set forth in Count IX, fails. Under Illinois law, there can be no claim for tortious interference with contract unless a valid and enforceable contract exists between the plaintiff and another. *A-Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir. 1992). In the complaint, Emery makes the conclusory allegation that she had a valid, enforceable contract with Metra, an allegation that Metra challenges. In her opposition brief, Emery effectively concedes that she was an at-will employee. In Illinois, at-will employees have no enforceable contract rights against their employers, and thus cannot bring claims for tortious interference with a contract.[8] *Dames &*

---

[7]For example, an attorney "is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Zdeb v. Baxter Int'l, Inc.*, 697 N.E.2d 425, 429 (Ill. App. Ct. 1998) (quoting Restatement (Second) of Torts § 586 (1977)).

[8]The civil rights cases Emery cites are inapposite. The fact that an at-will employee can bring employment discrimination claims under 42 U.S.C. § 1981 (prohibiting racial discrimination in making and enforcing contracts) has no bearing on whether an at-will employee can bring a state law claim for tortious interference with contract.

*Moore v. Baxter & Woodman, Inc.*, 21 F. Supp. 2d 817, 824 (N.D. Ill. 1998); *McKay v. Pinkerton's Inc.*, 607 N.E.2d 237, 240 (Ill. App. Ct. 1993); *Lusher v. Becker Bros., Inc.*, 509 N.E.2d 444, 445 (Ill. App. Ct. 1987). Count X is therefore dismissed.

### D. Intentional Interference with Prospective Economic Advantage (against Noland, Barnett, Rosen, Capra & Valkan only)

In Count X, Emery seeks to hold the individual defendants liable for intentional interference with prospective economic (or business) advantage. Under Illinois law, to state a claim for intentional interference with prospective economic advantage, a plaintiff must allege: "(1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991). Emery claims that the individual defendants interfered with her reasonable expectation of continuing her business relationships with (1) Metra, (2) NARTC, (3) JMLS, its administration, professors, graduates and students, and (4) various judges and attorneys. Emery claims that she reasonably expected each of these business relationships to continue "as valid relationships with employment and business opportunities." (*See, e.g.*, Compl. ¶ 141.) The court addresses each of these claims in turn.

Regarding Emery's claim that the individual defendants interfered with her ongoing business relationship with Metra, the individual defendants do not question at this stage whether her expectation of continuing the relationship with Metra was reasonable. Rather, they move to dismiss on the ground that Emery has not alleged that they, Metra's employees and attorneys, are

third parties for purposes of tortious interference. They also argue that as Metra's attorneys, they had a conditional privilege to advise their client.

A party cannot tortiously interfere with its own business relationship. *Quist v. Bd. of Trs. of Cmty. Coll. Dist. No. 525*, 629 N.E.2d 807, 811-12 (Ill. App. Ct. 1994). Ordinarily, the agents of a party to the business relationship cannot be liable for tortious interference either, because they are not third parties to the relationship. *Id.* Further, a conditional privilege exists if the defendant "acts to protect a conflicting interest which is considered to be of equal or greater value" than the plaintiff's interest in protecting a business relationship. *Schott v. Glover*, 440 N.E.2d 376, 379-80 (Ill. App. Ct. 1982) (discussing interference with contractual relationship, and explaining that business relationship receives less protection under the law than contractual relationship). Under the conditional privilege, an attorney, "when acting in his professional capacity, [is] free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect." *Id.* at 380. There are exceptions to these general rules, however. Agents who act in their own personal interests and contrary to the interests of their employer may be deemed third parties. *See, e.g., Anderson v. Grayslake Sch. Dist. 46*, No. 94 C 5133, 1995 WL 9190, at *5 (N.D. Ill. Jan. 6, 1995). Likewise, even where a conditional privilege exists, the privilege does not shield a defendant who acts with malice. *Delloma v. Consol. Coal Co.*, 996 F.2d 168, 172 (7th Cir. 1993). For purposes of a claim for tortious interference with prospective economic relationship, "malice" means "intentionally and without justification" (not "vindictive or malevolent"). *Id.* (citing *Fellhauer*, 568 N.E.2d at 878). A "defendant may abuse the privilege, by making unjustified statements, by excessive publication of statements, or by making statements in conflict with the interest which gave rise to the privilege." *Id.* Here,

19

Emery alleges that the individual defendants acted in their own personal interests, and against Metra's best interests, and did so with "a desire to harm Emery that was unrelated to the interests of their client." (Compl. ¶ 35.) For notice pleading purposes, this is sufficient.[9]

Emery also claims that defendant Noland interfered with her relationship with the NARTC. Emery alleges that after she was elected president of the NARTC's Illinois/Indiana chapter, Noland made defamatory statements about her to Ronald Cuchna, an active member of the NARTC, who in turn spoke to the Executive Director of NARTC, demanding cancellation of Emery's membership. Emery's NARTC membership was cancelled and she was forced to step down as president of the local chapter. Emery's expectation of maintaining her presidency is not too speculative to be actionable, despite the defendants' argument to the contrary. She was not merely a candidate for the position—she had been elected. *C.f. Buchanan v. Serbin Fashions, Inc.*, 698 F. Supp. 731, 734 (N.D. Ill. 1988).

Additionally, Emery claims the individual defendants interfered with her reasonable expectation of continuing her business relationship with JMLS, its administration, professors, graduates and students. According to Emery, she represented JMLS on a goodwill basis regarding the school's informational, promotional, and advertising materials. Additionally, she had received an L.L.M. from the school and had an ongoing relationship with her professors,

---

[9]Under Illinois law, if the defendant's conduct is privileged, it is the plaintiff's burden to plead and prove that the defendant's actions were malicious or unjustified. *Zdeb v. Baxter Int'l, Inc.*, 697 N.E.2d 425, 431 (Ill. App. Ct. 1998) (citing *Fellhauer*, 568 N.E.2d at 878). If, however, the defendant's conduct "does not invoke a privilege, it is the defendant's burden to plead and prove justification as an affirmative defense." *Id.* (citing *Roy v. Coyne*, 630 N.E.2d 1024, 1033-34 (Ill. App. Ct. 1994)). Unless the complaint demonstrates the existence of a privilege, the defendant bears the "burden to plead and prove the privilege as an affirmative matter, for there may be no way for a plaintiff to know in advance whether the defendant enjoys a privilege, or indeed, whether he will ever claim that he does.'" *Id.* at 432.

some of whom had asked her to publish papers in various law reviews and journals. Emery alleges that the individual defendants (apparently all of them) posted a job notice for the Associate General Counsel position at JMLS two months after she had been removed from the position, even though they already knew that defendant Rosen would get the position. As a result of this posting, she received calls from various people regarding her job status at Metra. According to Emery, the posting, together with "widespread publishing of defamatory statements," led to the demise of her relationships with JMLS, its faculty, administration, graduates and students.

The claims relating to JMLS's faculty, administrators, graduates and students are far too attenuated to state a claim for intentional interference with prospective business advantage. Under Illinois law, a person who is the leading candidate for a job and allegedly loses the position as a result of defendant's interference has no claim because the "hope of receiving a job offer is not a sufficient expectancy." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996). Illinois courts have likewise rejected claims by professors whose renewable contracts were not renewed, finding that the plaintiff lacked a sufficient expectation of continued employment. *Id.* at 1300 (discussing *Werblood v. Columbia Coll.*, 536 N.E.2d 750 (Ill. App. Ct. 1989) and *Williams v. Weaver*, 495 N.E.2d 1147 (Ill. App. Ct. 1986)). Given such precedent, the fact that professors had asked her to publish papers in the past is too speculative to support her claim. Further, by claiming the individual defendants interfered with her reasonable expectation of continued business relationships with professors, administrators, students and graduates, she is essentially claiming that they interfered with her prospects for networking. Indeed, according to the complaint, Emery reasonably expected each of these business relationships to continue "as

21

valid relationships *with employment and business opportunities*." (Compl. ¶ 141.) (emphasis added). Yet she identifies no particular employment or business opportunity, and thus, alleges no more than the mere hope that these relationships might generate concrete opportunities. Emery offers no Illinois case that applies the tort of interference with prospective business advantage so expansively, and this court declines to do so. As a result, Emery has failed to allege an interference claim with respect to JMLS's faculty, administration, graduates and students.

The claims relating to her representation of JMLS, and the demise of that relationship, survive, however. Emery alleges that she represented JMLS throughout 2001 and into 2002, and that the individual defendants' intentional and unjustifiable conduct led to the dissolution of that relationship.[10] Under Illinois law, a third party who intentionally causes the termination of an at-will contract between an attorney and client may be liable for tortious interference with prospective business advantage, because until the attorney-client relationship is terminated, the at-will contract has value to the attorney. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & W. Ry. Co.*, 748 N.E.2d 153, 161 (Ill. 2001).

As for Emery's claim that the individual defendants interfered with her legitimate expectancy of continued relationships with judges and attorneys "as valid relationships with employment and business opportunities," this claim fails for the same reason that her claim regarding her relationships with the JMLS faculty, administration, graduates and students fails: her claim is based merely on the hope that networking will evolve into a tangible business opportunity, which is insufficient. Further, to the extent Emery claims that the individual

---

[10]Although she does not specify when her representation of JMLS ended, at this stage of the proceedings Emery is entitled to the inference that her attorney-client relationship with JMLS ended after the job posting and defamatory statements.

defendants interfered with her prospects for a federal judicial appointment, her claim is entirely too speculative. Emery had applied and interviewed for several federal judicial appointments. Evidently, she was told that the "process might take several years to come to fruition, but that Emery was a solid candidate for a judicial position." (Compl. ¶ 55.) The possibility of a federal judicial appointment years in the future is not actionable. *See Anderson*, 667 N.E.2d at 1299 ("hope of receiving a job offer" insufficient). To hold otherwise, at least under the facts alleged here, "would considerably broaden the scope of the tort." *Id.* at 1301.

Accordingly, Count X survives solely to the extent Emery claims that (1) the individual defendants intentionally interfered with her attorney-client relationships with Metra and JMLS, and (2) defendant Noland intentionally interfered with her relationship with the NARTC.

### E.     Civil Conspiracy (against all individual defendants)

The defendants seek dismissal of the civil conspiracy claim in Count XI on the ground that a principal and agent cannot conspire with each other under Illinois law. *Buckner v. Atlantic Plant Maint., Inc.*, 694 N.E.2d 565, 571 (Ill. 1998). That is true, but defendants overlook the fact that, unlike her § 1983 conspiracy claim, Emery brings her civil conspiracy claim solely against the individual defendants, not against Metra. Thus, there is no issue of a principal conspiring with its agents. Further, Emery's conspiracy claim incorporated all of her substantive state law claims. Because some of Emery's substantive claims survive, her conspiracy claim also survives. The defendants also argue that they cannot discern the general nature of her conspiracy claim or which defendants allegedly conspired. The answer is quite simple: Emery alleges that all of the individual defendants conspired to defame her and to intentionally interfere with her prospective business advantage—the only substantive state law claims against the individual defendants that

23

survive dismissal. According to the Seventh Circuit, "'[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with.'" *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) (quoting *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002)). The complaint adequately puts the individual defendants on notice of the civil conspiracy claim against them. Count XI therefore survives the motion to dismiss.

### III. "Motions" Raised in the Briefs

Both sides attempt to make various motions in their briefs. This is procedurally improper. According to this district's local rules, all motions must be presented to the court, and are subject to dismissal if not properly noticed. N.D. Ill. L.R. 5.3, 78.2. Emery asks the court to strike certain references by defendants to the other judicial proceedings. The court denies the motion, but notes that it found no need to consider those other proceedings. The defendants seek a more definite statement on numerous counts, in the event the court does not dismiss. As explained above, the court grants this request solely with respect to the defamation claim, Count VII. Finally, Emery seeks leave to amend the complaint to add two counts, alleging retaliation in violation of § 1983 and OSHA. The court denies this motion for failure to properly present it, and for failure to attach the proposed new pleading. *Bank of Wanakee v. Rochester Chees Sales, Inc.*, 906 F.2d 1185, 1192 (7th Cir. 1990).

### Conclusion

The defendants' motion to dismiss is granted in part and denied in part, for the reasons set forth above. Specifically, Count XI and parts of Counts VII and X survive. Counts I through VI, VIII, IX and XII, part of Count X, and Count VII as it relates to Metra are dismissed. Emery has

twenty-one days from the date of this order to file an amended complaint to the extent she can cure any of the defects addressed in this order. Likewise, Emery has twenty-one days to file a more definite statement for Count VII. In the event Emery does not amend, or amends but fails to state a federal claim, the court will decline to exercise supplemental jurisdiction and the case will be dismissed.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED:    September 18, 2003